# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Affirmative Insurance Company,          ) | Civil Action No. 5:14-cv-04087-JMC |
|                                         ) | |
| Plaintiff,   ) | |
| v.                                      ) | |
|                                         ) | |
| Travis K. Williams and Earl Bruce,      ) | **ORDER AND OPINION** |
|                                         ) | |
| Defendants.  ) | |
|                                         ) | |

Plaintiff Affirmative Insurance Company ("Plaintiff") filed this breach of contract and declaratory judgment action against Defendants Travis K. Williams ("Williams") and Earl Bruce ("Bruce") (collectively "Defendants") seeking a declaration by the court that Williams breached the terms of the automobile insurance Policy No. 301017675 ("the Policy"), Plaintiff has no duty to defend or indemnify any insured or purported insured in the underlying state court actions,[1] and Plaintiff has not acted in bad faith. (ECF No. 1.)

This matter is before the court on a motion by Defendants and Vikki Sheppard, individually and as Personal Representative of the Estate of Arthur B. Sheppard, and as a real party in interest ("Sheppard"), to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1) motion") (ECF No. 9), a motion by Plaintiff to strike all filings by Sheppard pursuant to Fed. R. Civ. P. 12(f) ("Rule 12(f) motion") (ECF No. 15), and a motion by Defendants and Sheppard to intervene pursuant to Fed. R. Civ. P. 24(a)(2) ("Rule 24(a)(2) motion") (ECF No. 17). For the reasons set forth below, the court **DENIES** both Defendants and Sheppard's Rule 24(a)(2) motion and Plaintiff's Rule 12(f) motion. The court **GRANTS** in part

---

[1] Vikki G. Sheppard, as Personal Representative of the Estate of Arthur Benjamin Sheppard, II, Case No. 2010-CP-38-1558; Vikki G. Sheppard, as Personal Representative of the Estate of Arthur Benjamin Sheppard, II, Case No. 2010-CP-38-1559.

1

and **DENIES** in part Defendant and Sheppard's Rule 12(b)(1) motion.

## I. RELEVANT BACKGROUND TO THE PENDING MOTION

The facts as viewed in the light most favorable to Plaintiff are as follows.

Plaintiff is an automobile insurer who issued the Policy to Bruce with a per-occurrence liability limit of $50,000.00, which included insurance protection for permissive use drivers. (ECF No. 1 at 2 ¶¶ 8-9.) On November 24, 2007, Williams, as a permissive use driver under the Policy, was involved in a crash with Sheppard and Arthur Benjamin Sheppard, II ("Arthur Sheppard"). (Id. at 2 ¶ 10.) Sheppard filed a wrongful death and survival action and a negligence action against Williams in South Carolina state courts, <u>Vikki G. Sheppard, as Personal Representative of the Estate of Arthur Benjamin Sheppard, II</u>, Case No. 2010-CP-38-1558 and <u>Vikki G. Sheppard, as Personal Representative of the Estate of Arthur Benjamin Sheppard, II</u>, Case No. 2010-CP-38-1559, respectively ("Underlying Actions"). (Id. at 2-3, ¶¶ 11-12.) The Underlying Actions allege that Williams crossed the center line and struck Sheppard's vehicle head-on, leading to the death of Arthur Sheppard due to a defective seatbelt, the failure of the airbag to deploy, and severe injuries to Sheppard. (Id. at 3 ¶¶ 13-14.) Plaintiff is defending Williams in the Underlying Actions under a reservation of rights. (Id. at 4 ¶ 18.)

Prior to a trial date being set, Sheppard's counsel Mark Tinsley ("Tinsley") offered to settle for the Policy limits on October 27, 2011, provided that he received the settlement checks, all paperwork, and a certified copy of the Policy within twenty days. (Id. at 4 ¶ 21.) Plaintiff provided settlement authority to Williams' counsel who, within the twenty day time period, accepted the offer in exchange for a covenant not to execute against Williams, but failed to provide the requested documents. (Id. at 4 ¶¶ 23-25.) Tinsley rejected the offer on the grounds that "he had to have everything within [twenty] days." (Id. at 4 ¶¶ 23-25.) Williams' counsel

subsequently filed and served an Offer of Judgment for policy-limits that Sheppard allowed to expire. (Id. at 4 ¶ 26.) Tinsley proposed a "high-low" partial settlement with a high of $7,500,000.00 in exchange for an assignment of any bad faith claims to Sheppard and the assurance that a new suit for bad faith would be filed against Plaintiff if the jury verdict exceeded the coverage limits. (Id. at 5 ¶ 29.) Williams requested that Plaintiff accept this offer, but Plaintiff rejected and informed Tinsley the offer to settle at policy-limits remained open. (Id. at 6 ¶ 30-31.) Tinsley then submitted an arbitration proposal capping Williams' liability at $10 million and removing the right to appeal. (Id. at 6 ¶ 32-34.) Plaintiff rejected the proposal since it required Williams to give up substantial rights for no benefit, did not include a neutral arbiter, and required clarification on several issues. (Id. at 6 ¶ 32-34.) Williams, after being informed by Plaintiff of his obligations under the Policy and that if he were to proceed unilaterally Plaintiff would withdraw coverage and defense in response to the breach, entered into an arbitration agreement. (Id. at 7 ¶¶ 35-37.) Plaintiff did not participate in these negotiations and did not consent to any partial settlement. (Id. at 8 ¶¶ 39, 42-43.) Plaintiff filed this action before the court on October 21, 2014. (Id.)

Defendants and Sheppard filed a Rule 12(b)(1) motion on December 2, 2014. (ECF No. 9.) Plaintiff filed a Response in Opposition on December 29, 2014 (ECF No. 14) and Defendants and Sheppard replied on January 8, 2015. (ECF No. 16.) Plaintiff filed a Rule 12(f) motion on December 29, 2014. (ECF No. 15.) Defendants and Sheppard filed a Response in Opposition on January 14, 2015. (ECF No. 18.) Defendants and Sheppard filed a Rule 24(a)(2) motion on January 14, 2015. (ECF No. 17.) Plaintiff filed a Response in Opposition on January 30, 2015, (ECF No. 21) and Sheppard and Defendants replied on February 9, 2015. (ECF No. 22.)

## II.     JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on Plaintiff's allegations that there is complete diversity of citizenship between the parties and "the amount in controversy exceeds $75,000 . . . ." (ECF No. 1 at 1.)

## III.    LEGAL STANDARD AND ANALYSIS

A.     Sheppard's Motion to Intervene

   1.  *Motions to Intervene Pursuant to Fed. R. Civ. P. 24*

"Intervention of Right" requires the court to permit anyone to intervene upon timely motion who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Thus, to intervene as of right, a movant must show: (1) timely application; (2) an interest in the subject matter of the underlying action; (3) that a denial of the motion to intervene would impair or impede the movant's ability to protect its interest; and (4) that the movant's interest is not adequately represented by the existing parties to the litigation. Houston Gen. Ins. Co. v. Moore, 193 F.3d 838, 839 (4th Cir. 1999). "A party moving for intervention under [Fed. R. Civ. P.] 24(a) bears the burden of establishing a right to intervene, and must do so by satisfying all four requirements." U.S. ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co., 349 F. Supp. 2d 934, 937 (D. Md. 2004) (citing In re Richman, 104 F.3d 654, 658 (4th Cir. 1997)). Failure to satisfy even one of these requirements is sufficient to warrant denial of a motion to intervene as a matter of right. See N.A.A.C.P. v. New York, 413 U.S. 345, 369 (1973).

   2.  *The Parties' Arguments*

In their Rule 24(a)(2) motion, Defendants and Sheppard contend that Sheppard has a

right to intervene since "as the Plaintiff in the underlying litigation, [she] has a significant interest in the Affirmative insurance policy and the issue of whether Affirmative is liable for extra-contractual damages for its negligent and bad faith conduct under the policy." (ECF No. 17-1 at 5.) Defendants and Sheppard also contend "Sheppard is so situated that the disposition of the action may as a practical matter impair or impede her ability to protect her interest . . . ." (Id. at 5.) Lastly, Defendants and Sheppard contend "the very fact that Affirmative named Earl Bruce as a defendant when he has absolutely no interest in this litigation to protect and the fact that Defendants have joined in Sheppard's motion yields the conclusion that Sheppard's interests are not adequately represented by existing parties. (Id. at 6.)

In their Response, Plaintiff contends "Sheppard is an outsider to this dispute and, as a third party, lacks standing to insert herself into a dispute between an insurer and its insured" since she is not in privity of contract, is not a named insured under Plaintiff's policy, and improperly relies on case law to support her Rule 24(a)(2) motion. (ECF No. 21 at 1-3.) Plaintiff further contends that "even if Sheppard otherwise satisfied the requirements for intervention, the current Defendants have an identical interest and adequately represent Sheppard's interest" since the Underlying Actions have not been reduced to a judgment and "current Defendants desire to establish and maximize coverage in this case." (Id. at 3-4.)

In their reply, Defendants and Sheppard contend that the issues raised by Plaintiff do not address Sheppard's ability to intervene under Fed. R. Civ. P. 24 and that "Fourth Circuit case law is clear that an interest relating to an insurance contract is sufficient to support a motion to intervene."(ECF No. 22 at 1-2.) Defendants and Sheppard emphasize that Plaintiff lacks standing to object to Sheppard's Rule 24(a)(2) motion in the first place. (Id. at 4.) Defendants and Sheppard contend that since they filed a joint Rule 12(b)(1) motion there is no separate filing to

strike. (Id. at 4.)

    3. *The Court's Review*

The burden rests with the moving party to establish each element necessary for a Rule 24(a)(2) motion. XL Specialty Ins. Co., 349 F. Supp. 2d at 937. "The burden on the intervener to show inadequacy of representation is minimal." See Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976). However, "when the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." Id.

Defendants and Sheppard do in fact share the same ultimate objective. Both parties want to establish that the Policy remains valid and ensure that the maximum amount of coverage possible is established – Defendants so that they are most fully defended and indemnified should they lose the Underlying Actions, Sheppard so that she can receive the maximum amount possible should she win the Underlying Actions. As such, Sheppard must demonstrate adversity of interest, collusion or nonfeasance in order to overcome the presumption that Defendants do in fact adequately represent her interests. Id. Sheppard presents no evidence that her objectives differ from Defendants anywhere in her Rule 24(a)(2) motion or her reply to Plaintiff's Response, much less that any of the three possibilities - adversity of interest, collusion, or nonfeasance - are met that would overcome the presumption of adequate representation. (ECF Nos. 17, 22.) The fact that Defendants and Sheppard have been in perfect unison in every filing in this case further suggests the uniformity of interests between the parties, making Sheppard's

intervention in essence redundant.[2] There is no indication in the record that Defendants possess any adverse factors, like financial constraints, that would suggest Defendants would provide anything less than a vigorous defense. See Teague v. Bakker, 931 F.2d 259, 262 (4th Cir. 1991) ("Given the financial constraints on the insureds' ability to defend the present action, there is a significant chance that they might be less vigorous than the Teague Intervenors in defending their claim . . . .")

Both parties have presented arguments concerning whether Sheppard has an interest in the Underlying Actions' subject matter or whether a denial of her intervention would impair or impede her ability to protect her interests. Even if the court were to find for Sheppard on these factors, it would still be unable to grant her Rule 24(a)(2) motion for the insufficiency of the fourth factor, as described above.

B.      Plaintiff's Motion to Strike Sheppard's Pleading

   1. *Motions to Strike Pursuant to Fed. R. Civ. P. 12(f)*

Fed. R. Civ. P. 12(f) allows a court, acting either on its own or on a motion, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[3]  Fed. R. Civ. P. 12(f). Generally, such motions "are only granted when the challenged allegations 'have no possible relation or logical connection to the subject matter of the

---

[2] "In fact, the Commonwealth's pleadings have been nearly identical to those submitted by VEPCO. It is difficult in light of this fact, to consider the representation of Virginia's interests by VEPCO inadequate." Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976).
[3] "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." CTH 1 Caregiver v. Owens, C/A No. 8:11-2215-TMC, 2012 WL 2572044, at *5 (D.S.C. July 2, 2012) (citation omitted). "'Scandalous' includes allegations that cast a cruelly derogatory light on a party to other persons." Id. (Citation omitted). "The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available." Id. (Citation omitted).

7

controversy' or 'cause some form of significant prejudice to one or more of the parties to the action.'" Moore v. Novo Nordisk, Inc., C/A No. 1:10-2182-MBS-JRM, 2011 WL 1085650, at *8 (D.S.C. Feb. 10, 2011) (citations omitted). "A motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted." Clark v. Milam, 152 F.R.D. 66, 70 (S.D. W. Va. 1993); see also Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) ("Rule 12(f) motions are generally with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'") (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (2d ed. 1990)). Moreover, "where there is any question of fact or any substantial question of law, the court should refrain from acting until some later time when these issues can be more appropriately dealt with." United States v. Fairchild Indus., Inc., 766 F. Supp. 405 (D. Md. 1991).

A Rule 12(f) motion falls within the discretion of the district court. Palmetto Pharm. LLC v. Astrazeneca Pharm. LP, No. 2:11-cv-00807-SB-JDA, 2012 WL 6025756, at *4 (D.S.C. Nov. 6, 2012) (citation omitted); Xerox Corp. v. ImaTek, Inc., 220 F.R.D. 241, 243 (D. Md. 2003). "When reviewing a motion to strike, 'the court must view the pleading under attack in a light most favorable to the pleader.'" Piontek v. Serv. Ctrs. Corp., Civil No. PJM 10-1202, 2010 WL 4449419, at *3 (D. Md. Nov. 5, 2010) (citation omitted).

2. *The Parties' Arguments*

Plaintiff contends in its 12(f) motion that because Sheppard is not a party to the suit and has not sought to intervene, as a non-party Sheppard lacks standing to file or join a motion to dismiss. (ECF No 15.) Therefore, Sheppard "should be dismissed from the lawsuit, and all filings by her stricken from the docket." (Id.)

In their Response, Defendants and Sheppard contend Plaintiff's "Motion to Strike should be denied because [Plaintiff] lacks standing to object to Sheppard's appearance and defense of the Defendants in the action as a real party in interest" and "Sheppard . . . is a real party in interest pursuant to Rule 17(a)." (ECF No. 18 at 2-3.) Defendants and Sheppard also emphasize the fact that since their Rule 12(b)(1) motion was filed jointly there is no separate filing to strike. (ECF No. 22 at 4.)

   3.  *The Court's Review*

The pure language of Fed. R. Civ. P. 17(a) has been interpreted by some courts as only applying to plaintiffs, not defendants, concerning whether the named party is the real party in interest. See Fed. R. Civ. P. 17(a) ("action must be prosecuted in the name of the real party in interest."); Frommert v. Conkright, 535 F.3d 111, 120 (2d Cir. 2008) (overruled on other grounds) ("Rule 12(a) is limited to plaintiffs."); Gardetto v. Mason, 854 F. Supp. 1520, 1544 (D. Wyo. 1994) ("[I]t is improper for a defendant to complain that it is not the real party in interest."). However, other courts have held that "prosecuted" actually should be construed to apply Fed. R. Civ. P. 17(a) to defendants as well. See BP Oil, Inc. v. Bethlehem Steel Corp., 536 F. Supp. 293, 295 (E.D. Pa. 1982). Since the Rule 12(b)(1) motion was filed jointly with Defendants, not filed individually by Sheppard, there is no separate filing to be stricken from the docket. (ECF No. 9.) Accordingly, the Rule 12(b)(1) motion can stand on its assertion by Defendants alone without consideration as to whether Sheppard's inclusion was improper.

Furthermore, the Rule 12(b)(1) motion obviously has a connection to the subject matter of the controversy as it contests the underlying jurisdictional grounds of the entire case, and there is no evidence suggesting it would be prejudicial to either party. Moore, 2011 WL 1085650, at *8. There is also no indication that the filings in question are immaterial, impertinent, or

9

scandalous. As there are no duplicate filings since Defendants and Sheppard have filed each jointly, there is no risk of redundancy. As such, the court denies Plaintiff's Rule 12(f) motion and turns to the merits of the pending Rule 12(b)(1) motion.

C.  Sheppard's and Defendants' Motion to Dismiss for Lack of Jurisdiction

    1.  *Declaratory Judgment Actions*

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)). Courts have long interpreted the Act's permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998). "[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

    2.  *Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)*

A Rule 12(b)(1) motion for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P. 12(b)(1). In determining whether jurisdiction exists, the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings

without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citation omitted).

### 3. *The Parties' Arguments*

Defendants and Sheppard contend in their 12(b)(1) motion that dismissal is required as the court lacks subject matter jurisdiction under the Ripeness Doctrine, or alternatively the court should decline to exercise jurisdiction. (ECF No. 9 at 1.) Citing Moore, Defendants and Sheppard contend that "the issues are not ripe and the case or controversy requirement has therefore not been met" since Plaintiff's requests for declarations are "asking the court to look into the future and stave off the threat of a judgment." (ECF No. 9-1 at 8, 14.) Defendants and Sheppard also contend that the court should decline to exercise jurisdiction even if it finds that subject matter jurisdiction does exist under the Nautilus factors since South Carolina has a strong interest in having the issues in this action decided in state court, the issues raised in this action can be more efficiently resolved in state court, federal involvement would result in entanglement due to overlapping issues, and the federal forum is being used for procedural fencing. (Id. at 9-14.)

Plaintiff contends that the Rule 12(b)(1) motion "fails to articulate any legal basis for dismissing the complaint." (ECF No. 14 at 1.) Plaintiff contends the Complaint presents a "common case and controversy that District Courts routinely handle." (Id. at 4) Plaintiff also contends that the Nautilus factors weigh in favor of exercising jurisdiction, citing Auto Owners Ins. Co. and Twin City Fire Ins. Co. as factually similar cases where the court has exercised

11

jurisdiction. (Id. at 6-8.) Plaintiff further contends that the references to Moore and Beach Cove Assocs. in the Rule 12(b)(1) motion do not provide support, as they "bear no resemblance to the facts of this case." (Id. at 9.) Lastly, Plaintiff contends that there is a threat of an imminent bad faith claim being brought against them, so the court should resolve this issue "for the sake of judicial economy." (Id. at 10-11.)

In their reply, Defendants and Sheppard contend that Plaintiff did not address the issue of ripeness, and instead "assert[ed] conclusory and unfounded arguments that include misrepresentations of the facts in an effort to divert the [c]ourt's attention from the real issue at hand, subject matter jurisdiction." (ECF No. 16 at 1.) Defendants and Sheppard contend that no settlement has been made and no judgment has been entered, and that the suit at hand is improper under South Carolina law as "a determination of the duty indemnify cannot be made at a preliminary stage in the proceedings . . . ." (Id. at 3.) Defendants and Sheppard further contend that Plaintiff fails to recognize that the court "must first have jurisdiction in order to have the power to exercise discretion," and Plaintiff's reliance on Auto Owners Ins. Co. and Twin City Fire Ins. Co. are misplaced, as both cases were ripe for adjudication. (Id. at 4-6.)

  4. *The Court's Review*

"While the Declaratory Judgment Act allows a court to issue a judgment before an injury is accomplished, there must be an actual controversy at issue." Permanent Gen. Assur. Corp. v. Moore, 341 F. Supp. 2d 579, 581 (D.S.C. 2004). In order to present an actual controversy in the case at hand, Plaintiff must "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (internal quotation omitted).

In regard to Plaintiff's second cause of action about the determination of possible bad faith claims, South Carolina law establishes that the court cannot yet address this issue, as it is not sufficiently ripe. Courts dealing with cases where an insurer seeks a declaration that it has not acted in bad faith have held that the cases were not ripe for adjudication when judgment had not been entered in the underlying suits which could expose the insured to a verdict in excess of the policy limits and give the insured the ability to bring suit for bad faith. Id. ("If a verdict was returned that was within the policy limits, then a declaratory judgment action would be unnecessary because [insured] would not have a bad faith claim."); Travelers Cas. Co. of Connecticut v. Legree, No. 1:12-CV-02548-JMC, 2013 WL 3833045, at *5 (D.S.C. July 23, 2013). As the Underlying Actions have not been resolved and no bad faith claim has yet been filed against Plaintiff, the court does not find Plaintiff's second cause of action ripe for adjudication. The potential of a future bad faith claim, even with the fact that the Underlying Actions include in their settlement agreement an agreement to "stay the execution of any judgment against Williams pending the resolution of any bad faith claim" (ECF No. 1 at 8), is not sufficient to make this issue ripe as there is still the possibility of settlement within the policy limits which would make any bad faith claims irrelevant.

In regard to Plaintiff's first cause of action about Defendants' breach of contract or alternatively a declaration regarding Plaintiff's duty to defend or indemnify under the Policy, Defendants' reliance on Moore is not relevant as Moore only dealt with a bad faith declaration. Moore, 341 F. Supp. 2d at 581. Defendants' reliance on Auto-Owners Ins. Co. v. Rhodes for the proposition that "a determination of the duty to indemnify cannot be made at a preliminary stage in the proceedings . . ." is also improper as Rhodes is distinguishable since this quotation is actually used to support a conclusion that a declaration concerning "property damages" is not

13

ripe as it depends on questions of fact, not law, that will be presented at trial. 748 S.E.2d 781, 787 (S.C. 2013). The case at hand does not deal with any underlying determination of fact, instead Plaintiff asks for the determination of a question of law as to whether or not a defense is owed to Defendants. (ECF No. 1 at 9-10.) Even if the determination of the duty to indemnify is not proper until the Underlying Actions reach a final stage, the duty to defend is clearly implicated and is proper to be resolved as Defendants are still involved in the determination of the Underlying Actions and potentially owed a defense by Plaintiff. As such, consideration of the Quarles and Nautilus factors are proper in determining whether the court should exercise its discretion over this declaratory judgment action.

When considering whether to exercise its discretion over a declaratory judgment, a district court first considers the Quarles factors of: "(1) [whether] the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) [whether] it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937). Additionally, when a related proceeding is pending in state court, additional Nautilus factors have been laid out for consideration:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

Auto Owners Ins. Co. v. Pers. Tough Med Spa, LLC, 763 F. Supp. 2d 769, 774 (D.S.C. 2011)

(citation omitted).[4]

The Quarles factors clearly weigh in favor of entertaining the declaratory judgment, as this action will settle the legal relations between Plaintiff and its insured, as well as provide clarity in regard to the duties Plaintiff may owe.

As to the first Nautilus factor, the fact that South Carolina law governs the coverage issue does indicate a degree of state interest. See id. at 775. However, since the Underlying Actions will not address the issue of the Policy's coverage and the issues raised in the case at hand will not be raised in state court since Plaintiff is not a party to these suits, exercising discretion over these matters would be proper. See id.

As to the second Nautilus factor, the "efficiency factor involves determining whether the questions in controversy . . . can better be settled in the proceeding pending in . . . state court and "may entail inquiry into the scope of the pending state court proceeding." Id. (citation omitted) (internal quotations omitted). Plaintiff is not a party to the underling action and the issues of coverage will not be litigated and would require the filing of a separate action to be addressed, so there is no greater efficiency to be had in state over federal court.

As to the third Nautilus factor, there is "little risk of entanglement because in determining whether there was a duty to defend, the district court would only need to compare the allegations in the state court action with the language in the insurance policy." Id. at 776 (citation omitted). The court is not being asked to address Defendants' liability in the Underlying Actions, and though some of the factual considerations will be the same there will not be such a redundancy that would create an unnecessary entanglement as the cases ultimately center on different issues.

---

[4] Reconsideration was granted on grounds that did not affect the cited statement of the law and its application to the facts relevant to this case. Auto Owners Ins. Co. v. Pers. Touch Med Spa, LLC, No. 4:10-cv-683-TLW, 2011 WL 4962917 (D.S.C. Oct. 18, 2011).

As to the fourth <u>Nautilus</u> factor, there does not appear to be procedural fencing, as the issues at hand will not be decided either way in the Underlying Actions. Unlike <u>Continental Cas. Co.</u>, there has been no subsequent amending of the state court pleadings to include Plaintiff that would resolve the issues of coverage and make this case redundant. 35 F.3d 963, 965 (4th Cir. 1994). This court is a perfectly appropriate forum for Plaintiff to bring this suit based on diversity jurisdiction.

Weighing the <u>Nautilus</u> factors, it is appropriate for the court to exercise jurisdiction over the declaratory judgment action regarding the status of Plaintiff's duties in regard to the alleged breach. Even if the court were to find that dismissal was proper for the declaratory judgments implicated in both of Plaintiff's causes of action, the breach of contract claim would still be before the court for determination. As such, full dismissal of the suit would be improper.

### IV.    CONCLUSION

For the reasons set forth above, the court **DENIES** both Sheppard's Rule 24(a)(2) motion (ECF No. 17) and Plaintiff's Rule 12(f) motion (ECF No. 15). The court **GRANTS** Defendants and Sheppard's Rule 12(b)(1) motion in regard to Plaintiff's claim seeking a declaration that it has not acted in bad faith, but **DENIES** Defendants and Sheppard's Rule 12(b)(1) motion in regard to Plaintiff's claim seeking declarations that Williams breached the insurance contract at issue and Plaintiff does not have a duty to either defend or indemnify in the underlying state court actions. (ECF No. 9.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

June 30, 2015
Columbia, South Carolina